IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEIDI HAPPEL and KENT HAPPEL, her husband, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 02 C 7771 |
| WAL-MART STORES, INC., a Delaware corporation, d/b/a WAL-MART PHARMACY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiffs Heidi Happel and Kent Happel brought this action against defendant Wal-Mart Stores, Inc., d/b/a Wal-Mart Pharmacy (Wal-Mart), alleging negligence, loss of society, willful and wanton misconduct, and battery. Wal-Mart now moves for summary judgment on the willful and wanton misconduct, and battery claims. Plaintiffs move to compel outstanding and additional discovery. For the following reasons, Wal-Mart's motion is denied, and plaintiffs' motion to compel is granted.

## BACKGROUND

For purposes of the summary judgment motions, the factual background is based on the parties' statements of fact, with all reasonable inferences drawn in favor of plaintiffs, the non-movants. Darnell v. Thermafiber, Inc., 417 F.3d 657, 659 (7th Cir. 2005). On August 4, 1993, Heidi called her physician, Dr. Torrence Lorenc, complaining of severe menstrual cramps and requesting a more effective pain reliever (def. facts ¶¶ 24-25). Dr. Lorenc prescribed Toradol, a non-steroidal anti-inflammatory drug (NSAID), and placed the prescription with the Wal-Mart pharmacy located in McHenry County, Illinois (def. facts ¶

26; plf. facts ¶ 31). Dr. Lorenc ordered this prescription despite the fact that Heidi was allergic to NSAIDs, which include pain relievers such as aspirin and ibuprofen (plf. facts ¶ 32). Florence Bowser, a Wal-Mart pharmacist who was on duty on August 4, 1993, took the call from Dr. Lorenc's office, but does not recall actually filling the Toradol prescription (def. facts ¶ 27).

Heidi called her husband, Kent, and asked him to stop by the pharmacy to pick up the prescription (def. facts ¶ 28). Neither Heidi nor Kent had heard of Toradol or knew that it was an NSAID (H. Happel dep. at 44). Heidi stated that she had previously had prescriptions filled by Wal-Mart, and that in the past pharmacy workers asked her about any drug allergies she might have. She said she always informed them that she was allergic to aspirin, acetaminophen and ibuprofen (H. Happel dep. at 50). Steven Odes, who was the pharmacy manager at the time, noted that pharmacists were required to ask about drug allergies on new prescriptions (Odes dep. at 20-21). Kent said the pharmacy worker asked him about Heidi's allergies, and that he said his wife was allergic to aspirin, ibuprofen and Tylenol (K. Happel dep. at 28-30). Kent could not identify the person with whom he spoke, but believed the worker was female (id. at 28-29). Odes stated that Bowser would have been the only pharmacist working on August 4, 1993 (Odes dep. at 7, lns. 20-21).

In addition to asking the customer about any allergies, the Wal-Mart computer system would have informed the pharmacist who filled the order that Toradol should not be given to Heidi. As a Wal-Mart customer, Heidi would have had a profile stored in the Wal-Mart computer system. That profile would have listed her allergies. Pharmacists were required to enter prescriptions into the computer system, and if a drug was contraindicated, a warning would flash on the screen alerting the pharmacist of the potentially dangerous drug interaction

(Bowser dep. at 65-66; Odes dep. at 28-29). The pharmacist could proceed with filling the prescription only after calling the prescribing doctor, or by manually overriding the computer warning by entering a code. It would have been improper for a pharmacist to override the computer without having first contacted the doctor (Bowser dep. at 70). There is no record of any call to Dr. Lorenc, or that a pharmacist manually overrode the computer in order to fill the Toradol prescription. If the computer did not contain information for a new drug, then the pharmacist would manually reference another source, such as a pharmacological guidebook in the pharmacy (Bowser dep. at 67). Bowser consistently maintained that she has no recollection of the entire incident, including whether she entered Heidi's name and the Toradol prescription into the computer (Bowser dep. at 31, 50, 65, 85, 94, 126). She did acknowledge that Heidi's allergies would have been available to her through the computer on the day the prescription was filled (*id*. at 51).

Heidi experienced respiratory problems approximately 40 minutes after taking the first dose of Toradol (H. Happel dep. at 60). She called Wal-Mart and asked if there was a reason for the reaction, and after being disconnected and calling again, she was told that she should not have had an adverse reaction to Toradol (H. Happel dep. at 61-62). But her breathing problems did not subside. After she was unable to reach Dr. Lorenc, Heidi phoned a friend who was a pharmacist and knew of her allergies (H. Happel dep. at 63-64). Her friend told her to go to the emergency room (H. Happel dep. at 65). Heidi went to the emergency room and was found to be in anaphylactic shock. As a result of this experience, Heidi claims that she now suffers asthma attacks with more frequency, petit mal seizures, and also that her multiple sclerosis has worsened.

This litigation has a lengthy procedural history, which need not be detailed here for the

purposes of Wal-Mart's summary judgment motions.[1]  Relevant, though, are the court's rulings on Wal-Mart's motions to dismiss.  Both the Illinois Code of Civil Procedure and Healing Arts Malpractice Act (HAMA) shield certain defendants from punitive damages claims that arise from malpractice claims.  *See* 735 ILCS 5/2-1115; 735 ILCS 5/2-1701 *et seq*. Plaintiffs initially sought punitive damages in their willful and wanton misconduct claim.  In our May 6, 2004, order, we concluded that HAMA prevented them from recovering those damages, but that they nevertheless stated a claim to the extent that the willful and wanton misconduct claim was "a species of malpractice."  Happel v. Wal-Mart Stores, Inc., 319 F. Supp. 2d 883, 885 (N.D. Ill. 2004).  We also ruled that plaintiffs stated a claim for battery, entitling them to seek punitive damages.  *Id*. at 885-86.

Wal-Mart again seeks to eliminate the battery and willful and wanton misconduct counts from the case.  It argues that a willful and wanton misconduct claim is identical to the negligence claim set forth in Count I, and that it also circumvents HAMA by inviting exemplary, aggravated or vindictive damages.  With respect to the battery claim, Wal-Mart argues that elements of battery are not met because it did not physically contact Heidi, there was not a total lack of consent on plaintiffs' part, and because there is no evidence that Wal-Mart intended to harm plaintiffs.  Wal-Mart contends, for both claims, that it cannot be vicariously liable for the acts of any employee because it did not condone or ratify the filling of the Toradol prescription.

---

[1] Litigation has spanned over 11 years in both state and federal court.  Prior opinions and orders may be found at: Happel v. Wal-Mart Stores, Inc., 316 Ill. App.3d 621, 737 N.E.2d 650, 250 Ill. Dec. 28 (Ill. App. 2d Dist. 2000), *aff'd* 199 Ill.2d 179, 766 N.E.2d 1118, 262 Ill. Dec. 815 (Ill. 2002); Happel v. Wal-Mart Stores, Inc., 286 F. Supp. 2d 943 (N.D. Ill. 2003), *id*., 2004 U.S. Dist. LEXIS 1463, 2004 WL 755581 (N.D. Ill. 2004), *id*., 319 F. Supp. 2d 883 (N.D. Ill. 2004).

## DISCUSSION

Summary judgment is proper when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We do not make credibility determinations or weigh evidence when ruling on a summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Our only task is to "decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

Wal-Mart's statement of facts adequately sets forth the procedural background and outlines the actual incident on which this litigation is based, but there is a dearth of factual statements that directly correspond to its arguments in support of summary judgment. Local Rule 56.1 exists in part because district courts have no obligation to scour the record in search of factual disputes. See FTC v. Bay Area Bus. Council, Inc., 423 F.3d 627, 634 (7th Cir. 2005) (quoting Waldridge, 24 F.3d at 922). The relatively thin statement of facts also supports plaintiffs' argument that Wal-Mart has essentially dressed its motion to dismiss arguments in summary judgment garb. The central issues of this case remain basically unchanged since we last denied Wal-Mart's motion to dismiss. It is true that the facts and not just the allegations are at issue now, but without additional factual development, Wal-Mart's arguments often rest on the allegations exclusively. The arguments relating to the willful and wanton misconduct count are illustrative.

### Count III–Willful and Wanton Misconduct

Wal-Mart argues that HAMA's ban on punitive, aggravated, vindictive and exemplary

damages bars a willful and wanton misconduct claim. This is essentially a legal argument and also one that the court considered when it concluded that plaintiffs may pursue their willful and wanton misconduct claim, but only to the extent that it seeks relief for malpractice. Still, Wal-Mart argues that the claim is improper because it focuses on the degree of its negligence, which is not a factor the jury may consider when it determines the award necessary to make plaintiffs whole. Wal-Mart also argues that to the extent that the willful and wanton misconduct claim is limited to compensatory damages, it is identical to the negligence claim.

To prevail on a willful and wanton misconduct claim a plaintiff must prove the elements of negligence and must also show that the defendant possessed "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." Kirwan v. Lincolnshire-Riverwoods Fire Prot. Dist., 349 Ill. App. 3d 150, 811 N.E.2d 1259, 1263, 285 Ill. Dec. 380 (Ill. App. 2d Dist. 2004) (quoting Adkins v. Sarah Bush Lincoln Health Center, 129 Ill. 2d 497, 544 N.E.2d 733, 743, 136 Ill. Dec. 47 (Ill. 1989)); see also Russell v. Good Shepherd Hosp., 222 Ill. App. 3d 140, 583 N.E.2d 672, 677, 164 Ill. Dec. 756, (Ill. App. 2d Dist. 1991). In Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill.2d 429, 593 N.E.2d 522, 531, 170 Ill. Dec. 633 (Ill. 1992), the Illinois Supreme court noted that "there is a qualitative difference between negligence and willful and wanton conduct."[2] Plaintiffs' negligence and willful and wanton misconduct claims are therefore not identical. The latter places an additional evidentiary burden before plaintiffs. Further, the claims are not redundant simply

---

[2] Wal-Mart posits a narrow view of Burke, and argues that the case only stands for the proposition that a plaintiff's negligence cannot be compared to a defendant's willful and wanton misconduct in order to reduce plaintiff's recovery. In Burke, the court did arrive at that conclusion, but only after an exhaustive analysis of case law and major treatises on the subject of willful and wanton conduct. See Burke, 593 N.E.2d at 527-532. Only after that inquiry did the court conclude that willful and wanton conduct was not coterminous with negligence. Id. at 532 ("After a careful consideration of relevant statutes, case law, and other authority, we conclude that willful and wanton conduct, although sharing some characteristics of negligence, can be distinguished from that type of fault"). Wal-Mart's interpretation of Burke overlooks the reasoning behind the conclusion.

because they may yield only one type of relief in the form of compensatory damages.

To support its argument that the two claims are redundant, Wal-Mart cites Maness v. Santa Fe Park Enters., 298 Ill. App. 3d 1014, 700 N.E.2d 194, 233 Ill. Dec. 93 (Ill. App. 1st 1998). In Maness, the court dismissed a willful and wanton claim that the plaintiffs added after their negligence claim failed due to the effect of a signed release that exculpated the defendants for negligent acts. Id. at 198, 202. Because a willful and wanton misconduct claim encompasses the elements of negligence, such a claim cannot succeed when a negligence claim fails. See Bryant v. Livingi, 250 Ill. App. 3d 303, 619 N.E.2d 550, 557, 188 Ill. Dec. 925 (Ill. App. 5th Dist. 1993). Unlike Maness, plaintiffs here have a viable negligence claim and they also offer more than conclusory allegations to support the willful and wanton misconduct claim.

It is true that plaintiffs often raise willful and wanton misconduct claims as alternatives to malpractice claims in order to avoid bars on punitive damages. See Brush v. Gilsdorf, 335 Ill. App. 3d 356, 783 N.E.2d 77, 81, 270 Ill. Dec. 502 (Ill. App. 3d Dist. 2002); Calhoun v. Rane, 234 Ill. App. 3d 90, 599 N.E.2d 1318, 1322, 175 Ill. Dec. 304 (Ill. App. 1st Dist. 1992); Russell, supra; Bryant, supra; Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc., 2005 U.S. Dist. LEXIS 29663, *33, 2005 WL 3159680 (N.D. Ill. 2005) ("willful and wanton misconduct typically alleged is in conjunction with both intentional torts and negligence to support a claim for punitive damages"). A willful and wanton misconduct claim is also asserted when a defendant is statutorily immune from liability for negligence. See Yuretich v. Sole, 259 Ill. App. 3d 311, 631 N.E.2d 767, 770, 197 Ill. Dec. 545 (Ill. App. 4th Dist. 1994); Meck v. Paramedic Servs., 296 Ill. App. 3d 720, 695 N.E.2d 1321, 1325, 231 Ill. Dec. 202 (Ill. App. 1st Dist. 1998). These cases do not, however, prohibit a party from seeking compensatory damages on a willful

and wanton misconduct theory.

We have already pared down the willful and wanton misconduct claim, striking the prayer for punitive damages (Happel, 319 F. Supp. 2d at 885) in a manner consistent with the Calhoun and Russell decisions. Those cases dismiss willful and wanton misconduct counts not because plaintiffs sought only compensatory damages, but because they sought punitive damages not obtainable under HAMA. In Russell, the plaintiff did seek both compensatory and punitive damages. Id., 583 N.E.2d at 674. When it dismissed the willful and wanton misconduct claim in its entirety, the court did not decide whether the claim was legally sufficient, despite the prayer for punitive damages, because it considered that to be an "abstract issue." Id. at 677. Yet, the court still opined that the plaintiff would not benefit from the willful and wanton claim, which would simply hold her to a higher burden of proof. Id. at 677. These observations are dictum and do not stand for the proposition that a negligence claim precludes a willful and wanton misconduct claim when only compensatory damages are available. Further, as our May 6, 2004, order suggests, we do not share the Russell court's view of managing a plaintiff's complaint and have already engaged the "abstract issue" and concluded that Count III is otherwise legally sufficient.

Because plaintiffs are limited to compensatory damages, the willful and wanton misconduct claim does not circumvent HAMA.[3] HAMA focuses on damages, as the state legislature intended to prevent the imposition of excessive liability on the medical profession. See Bernier v. Burris, 113 Ill.2d 219, 497 N.E.2d 763, 776, 100 Ill. Dec. 585 (Ill. 1986). Because HAMA only prohibits specific types of punitive awards, not the consideration of certain types

---

[3]The absence of punitive damages in Count III renders Wal-Mart's complicity rule arguments inapposite.

of evidence, it is not offended when only compensatory damages are sought. Further, Wal-Mart's speculation that a jury would award excessive damages upon hearing evidence of willful and wanton misconduct, is not evidence that would warrant summary judgment. In fact, it is not evidence at all – it is argument. Compensatory damages do not depend on a defendant's conduct. Only one sum will make a plaintiff whole. Limiting instructions will regulate the scope of the jury's deliberations and any award that it may issue.

Lastly, the evidence in the record precludes a finding that no genuine issue of material fact exists. Odes testified that Wal-Mart would have known about her allergies, and that they were likely in the computer (Odes dep. at 39). Odes also said that it was standard practice to ask about allergies for new prescriptions (*id.* at 21). Heidi said that she was asked in the past about her allergies, supporting a finding that they were entered into the computer system (H. Happel at 50). Kent stated that he was asked and told the pharmacist about Heidi's allergies (K. Happel dep. at 28). Also, Heidi's allergies were written on the prescription (Bowser dep. at 150-51). The record also shows that Wal-Mart had a computer system in place that would have alerted the pharmacist about a drug interaction (Odes dep. at 28-29; Bowser dep. at 66-67, 70). And even if Toradol was a new drug not entered into the system, the pharmacist could have looked up its information in a pharmacological book (Bowser dep. at 67). At the time of the incident, information was available to Bowser that Toradol should not have been given to a patient who was allergic to NSAIDs (Odes dep. at 32). Bowser's failure to recollect the incident does not entitle Wal-Mart to summary judgment. Importantly, Bowser stated that she could not recall the events. She did not say that she knew she was not there nor that the related events did not occur. *See* Bowser dep. at 94. Also, her initials appear on the prescription label (*id.* at 99-100). In light of the reasons that the prescription should not have been filled, the

record clearly shows genuine factual disputes as to whether filling the prescription was done with a "deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." Kirwan, 811 N.E.2d at 1263.

### Count IV–Battery

A battery occurs under Illinois law when someone intentionally causes a harmful or offensive contact with another. Cohen v. Smith, 269 Ill. App. 3d 1087, 648 N.E.2d 329, 332, 207 Ill. Dec. 873 (Ill. App. 5th Dist. 1995). When battery is alleged in a medical context, the plaintiff must also show that he did not consent to the contact. McNeil v. Brewer, 304 Ill. App. 3d 1050, 710 N.E.2d 1285, 1289, 238 Ill. Dec. 183 (Ill. App. 3d Dist. 1999) (citing Mink v. University of Chicago, 460 F. Supp. 713 (N.D. Ill. 1978). Consent is the "real crux of the issue" in medical battery cases and the scope of consent is crucial to any recovery. Mink, 640 F. Supp. at 718. Lack of consent is established when there is a complete lack of consent, when the treatment is against the plaintiff's will, or when the treatment substantially varies to the consent given. Hernandez v. Schittek, 305 Ill. App. 3d 925, 713 N.E.2d 203, 207-208, 238 Ill. Dec. 957 (Ill. App. 5th Dist. 1999). Thus, the Happels must show that Wal-Mart intended to cause a harmful contact, that harmful contact resulted and that they did not consent. Happel, 319 F. Supp. 2d at 885.

Wal-Mart argues that it is entitled to summary judgment because the elements of battery are not met. It contends that there was no physical contact with the Happels, there was not a total lack of consent on the Happels' part, and there is no evidence that it or any employee intended to harm the Happels. Wal-Mart also argues that the complicity rule bars any recovery of punitive damages.

In the May 6, 2004, order we observed that liability for battery does not require that

there be actual physical contact. Rather, the contact requirement may be satisfied if the defendant caused a plaintiff to come into contact with a substance in a way that may be viewed as offensive. Happel, 319 F. Supp. 2d at 886. Therefore, Wal-Mart's argument that it never physically contacted plaintiffs fails. *See* Gaskin v. Goldwasser, 166 Ill. App.3d 996, 520 N.E.2d 1085, 1094, 177 Ill. Dec. 734 (Ill. App. 4th Dist. 1988) ("To be liable for battery, the defendant must have done some affirmative act intended to cause an unpermitted contact").

Wal-Mart also argues that it cannot be liable for battery by simply filling a prescription pursuant to a doctor's order. This argument appears to invoke the learned intermediary doctrine, which the Illinois Supreme Court concluded is inapplicable to this case. Happel v. Wal-Mart Stores, Inc., 199 Ill.2d 179, 766 N.E.2d 1118, 1127, 262 Ill. Dec. 815 (Ill. 2002). Further, the record shows factual disputes as to whether Wal-Mart consciously disregarded indications that the Toradol prescription should never have been filled. There is evidence that Wal-Mart knew the drug would have been offensive and harmful to Heidi, because it was known that she was allergic to NSAIDs.

Wal-Mart next argues that this is not a total lack-of-consent case. In the May 6, 2004, order we evaluated whether the facts alleged were closer to the total lack-of-consent case, Mink, or the informed consent case, Moore v. Eli Lilly and Co., 626 F. Supp. 365, 366 (D. Mass. 1986). The characterization is significant, for a total lack-of-consent claim sounds in battery, but an informed consent claim sounds in negligence. We concluded that plaintiffs' claim was "closer to Mink than to Moore," in large part because Heidi had no idea of Toradol's nature. Wal-Mart faults that conclusion and contends that the court failed to distinguish between lack-of-total consent and lack of informed consent. We disagree.

Wal-Mart asserts that this is an informed consent case because Heidi knew she was

taking some type of drug, but was simply not informed of the side effects. But this is not an informed consent case simply because Heidi knew she was taking a drug and suffered an adverse reaction. Heidi did not experience side effects, with a low degree of probability of occurring, but instead, a life-threatening allergic reaction that was certain to and actually did occur. The gravamen of plaintiffs' claim is not that Wal-Mart should have provided more information. Instead, the prescription should not have been filled in the first place. No amount of information could have rendered plaintiffs' consent "informed." In Gaskin, *supra*, the defendant removed 19 of the plaintiff's teeth, five without consent. The court concluded that the removal of the five lower teeth was without plaintiff's consent and was substantially at variance with the scope of his consent, which together supported the plaintiff's battery theory. *Id.* at 1095. Here, plaintiff believed she was receiving a pain reliever, not a drug that would cause her to go into anaphylactic shock. Because there is at least a factual dispute that the prescription should not have been given to Heidi – that it was actually filled was not substantially similar to plaintiffs' consent.

Wal-Mart next attacks the intent prong of plaintiffs' battery claim. It first cites the Illinois Appellate Court decision in which the court held that plaintiffs' battery claim was defective because it lacked an allegation of intent. Wal-Mart's focus on the allegations would be better suited for a motion to dismiss. Moreover, in ruling on Wal-Mart's motion to dismiss we held that the battery allegations, including the intent-to-harm claims, were sufficient. Happel, 319 F. Supp. 2d at 886.

Plaintiffs argue that it is lack of consent and not intent to harm that is the crucial element of a medical battery claim. It is true that Gaskin, 520 N.E.2d at 1094 (quoting Mink, 460 F. Supp. at 718) noted that the gist of a battery claim is the absence of consent to the

contact, and not the defendant's hostile intent. But we do not interpret that observation to mean that the intent element is mere surplusage. Indeed, one only needs to reference Mink's summary of the elements of battery to see that "intentional acts by the defendants" is an element along with offensive contact and lack of consent. Mink, 460 F. Supp. at 718. Yet the intent element is not as demanding as Wal-Mart portrays.

Wal-Mart posits that plaintiffs would have a stronger case if the pharmacist on duty filled the prescription with arsenic or cyanide. To the contrary, plaintiffs need not show that Wal-Mart actually intended to harm or harbored ill-will toward them. Mink, 460 F. Supp. at 718 ("an intent to do harm is not essential to the action"); see also Curtis v. Jaskey, 326 Ill. App. 3d 90, 759 N.E.2d 962, 965, 259 Ill. Dec. 901 (Ill. App. 2d Dist. 2001) ("It is unnecessary for a plaintiff to establish hostile intent on the part of the defendant "); Gragg v. Calandra, 297 Ill. App. 3d 639, 696 N.E.2d 1282, 1287, 231 Ill. Dec. 711 (Ill. App. 2d Dist. 1998). The act of giving the Happels Toradol was intentional in the same manner that the administration of DES to the plaintiffs in Mink was intentional. Mink, 460 F. Supp. at 718 (noting that to show the element of intent is met, "plaintiffs need show only an intent to bring about the contact"). Wal-Mart further argues that "it is far from undisputed that Toradol is 'poison' to Heidi Happel (def. reply at 4). This argument misstates plaintiffs' burden at this stage. Plaintiffs need not show that a fact is undisputed, and if they did, summary judgment would be theirs. Instead, to survive the motions they must only show that there is a genuine dispute of material fact.

Many of the facts that support the willful and wanton misconduct claim also support the battery claim, particularly those relating to Wal-Mart's knowledge of Heidi's allergies and its filling of the prescription despite the indications and warnings not to give Heidi Toradol. We do not imply that proof of battery, an intentional tort, can be established by evidence that shows

only gross negligence or recklessness. Intent is an issue that is notoriously difficult to resolve on summary judgment because it too often requires credibility determinations that are improper at this stage. Concluding that there are no factual disputes on the intent element is especially difficult in light of Bowser's denial of any recollection of the incident, which conflicts with evidence that suggests she filled the prescription, such as Odes' testimony and her signature on the prescription label.

Wal-Mart next argues that even if the battery claim survives summary judgment, plaintiffs cannot recover punitive damages due to Illinois' complicity rule. The rule states that "an employer can only be held vicariously liable for punitive damages if the employer ordered, participated in, or ratified the outrageous misconduct of the employee." Brummerstedt v. American Airlines, 845 F. Supp. 532, 533 (N.D. Ill. 1993) (internal quotations omitted). The corporate defendant may also be held liable if it recklessly hired the unfit employee, or if the employee was a manager who acted within the scope of employment. *Id.* at 534; *see also* Jannotta v. Subway Sandwich Shops, Inc., 125 F.3d 503, 513 (7th Cir. 1997). The policy behind the rule is that the rationale underlying punitive damages "is sharply diminished when liability is imposed vicariously." Deal v. Byford, 127 Ill.2d 192, 537 N.E.2d 267, 272, 130 Ill. Dec. 200 (Ill. 1989).

Wal-Mart contends that there is no evidence that it ordered, participated in or ratified the conduct constituting battery. In response, plaintiffs focus on the managerial exception. Referencing a section from Wal-Mart's Pharmacy Operations Manual, plaintiffs posit that pharmacists are managers and dispensing Toradol was within the scope of a pharmacist's

employment. *See* plf. facts ex. D.[4] Wal-Mart takes issue with plaintiffs' interpretation of its manual, and also stresses that pharmacists do not act in managerial position with any authority when they fill prescription orders.

The operations manual addresses pharmacists as "Wal-Mart management associates" and leaders, and it details their "Management Responsibility." *See* plf. Ex. D. at 1-4. The manual provides that pharmacists have supervisory duties, as it requires that they "supervise all Supportive Personnel who work in the Pharmacy Department." *Id.* at 3. According to the manual, pharmacists have management responsibilities relating to patients, other health professionals and the community. These responsibilities are broad, and the operations manual obligates pharmacists to effectuate many company policies and make a number of discretionary determinations and decisions. The enumerated responsibilities support, at minimum, a conclusion that factual disputes exist as to a pharmacist's managerial capacity. *See* Kemner v. Monsato Co., 217 Ill. App. 3d 188, 576 N.E.2d 1146, 1157-58, 160 Ill. Dec. 192 (Ill. App. 5th Dist. 1991). Maintaining "a good relationship" with local health professionals, offering expertise to local prescribers, and keeping updated on knowledge and skills of pharmacy (plf. Ex. D. *Id.* at 2-3) are not duties that an employee who simply follows orders would execute. Pharmacists are clearly responsible for operations in the pharmacy department, and filling prescriptions are squarely within the scope of their employment. *Id.*

There is passing reference to a Pharmacy District Manager in the manual, which Wal-

---

[4] Plaintiffs state that "Wal-Mart pharmacists are managers" in paragraph 42 of their additional statement of facts. In support, plaintiffs reference Exhibit D. Wal-Mart denies plaintiffs' assertion and claims that plaintiffs misquote Exhibit D. Wal-Mart also makes general reference to Exhibit D. General citation to the record is not the specific reference required by L.R. 56.1. *See* Ammons v. Aramark Unif. Servs., 368 F.3d 809, 817-818 (7th Cir. 2004). Wal-Mart's contention that plaintiffs misquoted the exhibit is doubly frustrating because plaintiffs' paragraph 42 contains no quotations. Plaintiffs' paragraph 42 and Wal-Mart's response are both disregarded, and we instead rely on an independent evaluation of the operations manual.

Mart highlights as evidence of a superior manager. For one thing, in making this point Wal-Mart acknowledges that pharmacists have a managerial capacity. For another, it fails to show that the presence of a superior manager strips a pharmacist of any managerial authority that she admittedly possesses. Even with the dearth of evidence relating to this aspect of plaintiffs' case, the operations manual creates a factual dispute regarding the managerial capacity of Wal-Mart pharmacists. At this stage, the complicity rule does not bar plaintiffs' claim for punitive damages.

<u>Plaintiffs' Motion to Compel</u>

Pursuant to a court order, on September 9, 2005, plaintiffs submitted a letter in which they compiled a list of outstanding and additional discovery, and provided reasons why the discovery was sought. This letter was converted to a motion to compel, which became fully briefed on November 16, 2005. Resolution of that motion was stayed during the summary judgment proceedings.

Spanning eleven years and multiple jurisdictions, this case has a labyrinthine nature, with numerous turns but no end. The period immediately prior to the motion to compel was no exception, and revisiting that time, with the docket sheet as our guide, assists in the resolution of plaintiffs' motion. On December 7, 2004, we ordered that fact discovery would close on March 31, 2005 (dkt. 66). Then, on March 15, 2005, Wal-Mart filed a motion to extend the discovery cutoff date so it could depose two health care treaters (dkt. 64). We granted that motion and extended the discovery cutoff date until April 26, 2005 (dkt. 68). On April 18, 2005, Wal-Mart moved for a pretrial conference, intimating in its motion that settlement was a realistic and desired outcome (dkt. 70). We set May 18, 2005, as a date for the settlement conference (dkt. 72). That date was then reset to July 14 (dkt. 74), and then to August 1 (dkt.

76). Then, on August 1, 2005, we ordered Wal-Mart to submit its determination of negligence by August 15, 2005, and also requested all additional and outstanding discovery matters be submitted by plaintiffs before August 25, 2005 (dkt. 77). On August 15, 2005, Wal-Mart requested an extension of time in order to make the negligence determination (dkt. 78), and we granted that motion, giving Wal-Mart until August 31, 2005, to make its determination (dkt. 80). We also gave plaintiff until September 10, 2005, to submit additional and outstanding discovery (*id.*). Proceedings then focused on plaintiffs' motion to compel and Wal-Mart's summary judgment motions. Wal-Mart requested that we stay any ruling on the motion to compel until the summary judgment motions were resolved.

The outstanding discovery that plaintiffs seek includes discovery from the action in the McHenry County court, including interrogatories and several notices to produce. The outstanding discovery also includes plaintiffs' second interrogatories and first request to admit, which were filed in this court. The additional discovery includes plaintiffs' third interrogatories, their second request for production, and second request to admit.[5] Wal-Mart objects to all discovery requests on four primary grounds. First, it argues that it has already responded to the discovery requests over the course of the three separate actions. Second, Wal-Mart contends that discovery is irrelevant because this court's May 6, 2004, order struck punitive damages for the willful and wanton count, and limited battery to intentional acts. Next, Wal-Mart contends that the discovery sought exceeds the scope of the facts concerning the contact Heidi had with the pharmacy on August 4, 1993. Finally, Wal-Mart asserts that

---

[5] Wal-Mart includes these filings in its response and objection to the motion to compel under tab "A." Each filing is marked with a distinct letter and exhibit tag. For the sake of clarity, we will cite to the filings by reference to tab "A" and the additional exhibit tag. Thus, the answers to the first interrogatories are referred to as Ex. A(A).

fact discovery is now closed and the requests for admissions are therefore untimely.

Prior to addressing these objections in the context of the specific discovery requested, we must highlight the recent procedural history outlined above. It should be apparent from the history that settlement negotiations interrupted ongoing discovery. After settlement negotiations fizzled, the parties and the court focused on the motion to compel and motions for summary judgment. Discovery in this case did not terminate during the unsuccessful attempt at settlement and the briefing and consideration of the motions. Our August 1, 2005, request for all outstanding and additional discovery is inconsistent with any belief that discovery in this case closed. Moreover, the issues in this case were in some respects in the process of being forged by Wal-Mart's motions, including the motions to dismiss and recent motions for summary judgment. Rulings on those motions have further shaped the issues and focused the scope of discovery. For example, discovery relating to intent and punitive damages is now relevant after the above ruling on plaintiffs' battery claim. Also, the case now stands on different footing than it did in state court and the relevant discovery should not be constrained by the scope of discovery from the McHenry County action.

In reviewing the motion to compel, we conclude that plaintiffs are entitled to most of what they seek. At the same time, we note that the responses may well provide little solace to plaintiffs. In most instances Wal-Mart has provided information, but it is qualified or inconclusive, or incomplete. We do not mean to suggest that a definitive response will necessarily contradict the earlier information.

Plaintiffs first seek answers to questions 8, 9 and 10, from the first set of interrogatories. *See* def. Ex. A(A). In question 8, plaintiffs requested any training Wal-Mart provided to pharmacists. Plaintiffs asked what training was provided with respect to Toradol in question

9. And in question 10, plaintiffs asked what requirements pharmacists were expected to meet in order to work at Wal-Mart. In its answers, Wal-Mart objected to question 8 on the ground that it called for a narrative, and it found questions 9 and 10 irrelevant. It asserted that all three questions were more appropriately subjects of a discovery deposition.

Wal-Mart now argues that responses have already been provided to these questions through the depositions of Bowser, Odes and Judith Grauman, the pharmacy technician allegedly on duty on August 4, 1993. However, the proper party to respond to plaintiffs' interrogatories is not the employee, but the employer, and the depositions of the employees do not respond to the questions. Wal-Mart also asserts that it provided a response in its answer to plaintiffs' supplemental interrogatories and requests for production (def. Ex. K, response 1). This response only focuses on any policies and procedures for pharmacists that relate to filling prescriptions, not to the general training that pharmacists received. Also, Wal-Mart claims that its policies and procedures were not written, but this does not respond to questions 8 and 9, which ask about any training provided, not just written training material, or question 10, which asks about general employment standards. Further, questions 8 and 9 relate to punitive damages, which have until now been unavailable to plaintiffs. Wal-Mart's objections to questions 8, 9 and 10 of the first set of interrogatories are overruled.

Plaintiffs next seek to compel Wal-Mart to answer question 16 of the first set of interrogatories. In that question plaintiffs ask for any complaints concerning Toradol, and the details of any existing complaints. Wal-Mart objected to that question as over-broad, but continued to answer that no complaints were "known at this time." In its response, Wal-Mart reiterates that no complaints "were known to exist." Wal-Mart also references its response to plaintiffs' first notice to produce (def. Ex. G), and its answer to additional interrogatories

(def. Ex. F), which it asserts respond to question 16.

By framing its response in terms of what it did know, instead of what it does know, Wal-Mart fails to respond. In Exhibit F, Wal-Mart responded to questions about "occurrences" similar to the August 4, 1993, incident, but question 16 asks about any complaints. The difference may appear minor, but as the content of question 16 indicates, a complaint would likely generate a larger paper trail than an occurrence would produce. The questions have distinct scopes, and answers contained in Exhibit F do not respond to question 16. Further, in Exhibit F, Wal-Mart notes that its investigation continues, which is not a final and responsive answer, as it was issued a number of years ago. Wal-Mart's reference to Exhibit G is entirely unpersuasive. In response to plaintiffs' first notice to produce, Wal-Mart issued a series of general objections, and then, in response to the first production request, it presented another list of objections that attack the request for being broad, vague, burdensome, without a reasonable scope, duplicative, and costly. The answers to the subsequent eleven questions merely cite to the first response. The responses to requests 3, 4 and 5 in Exhibit G do not count as prior adequate responses. Wal-Mart's objection to question 16 of the first set of interrogatories is overruled.

Plaintiffs also seek to compel Wal-Mart to answer questions 17, 18 and 19 of the first set of interrogatories. In their reply brief, plaintiffs acknowledge that Wal-Mart responded to these questions in its supplemental answers to interrogatories (def. Ex. H). Plaintiffs do not state that either Exhibit G or Exhibit L respond to the questions at issue.

Plaintiffs next seek an answer to interrogatory number 22 of the first set of interrogatories. In that question plaintiffs ask for all lawsuits, including medical malpractice, in which Wal-Mart has been a defendant, and related details, such as the case numbers, the

allegations, and the injuries alleged. Plaintiffs argue that the information sought is relevant to issues of liability and punitive damages. Wal-Mart initially objected to that question, citing local state rules. In response to the motion to compel, Wal-Mart claims that it responded to that question in Exhibit G and Exhibit F.

Wal-Mart's citation to local rules is no longer a valid ground for objection. We have noted above that Exhibit G is non-responsive, but this does not mean that Wal-Mart may not object directly to the interrogatory, instead of through reference to a response to the first notice to produce. Exhibit F contains answers to plaintiffs' additional interrogatories, and question 3 asked for any and all lawsuits similar to the August 4, 1993, incident. Wal-Mart answered that no lawsuits were known, but that its investigation was ongoing. This answer is not responsive to interrogatory number 22 because the question posed in the additional interrogatory was narrower in that it only asked for lawsuits arising out of similar occurrences. Moreover, the answer is inconclusive and non-responsive to the extent that it was submitted a number of years ago and mentions an ongoing investigation. Wal-Mart's objections to interrogatory number 22 of the first set of interrogatories are overruled.

In question 24 of the first set of interrogatories plaintiffs ask if any record involving them was manipulated or destroyed. Plaintiff asserts that this information is relevant to issues of liability and punitive damages. Wal-Mart objects to this question and relies on local rules that are not applicable here. Wal-Mart also contends that it previously responded to this question, and it cites its supplemental answers to interrogatories (def. Ex. H). Its response to question 24 was, "None known at this time; investigation continues." We have already discussed why this answer is not responsive. Wal-Mart's objection to question 24 of the first set of interrogatories is overruled.

Plaintiffs next seek to compel answers to questions 28, 29, 30, 31 and 32 of the first set of interrogatories. Question 28 asks whether Wal-Mart or its attorneys had any correspondence with Heidi's health care treaters. Question 29 asks if any subpoenas were issued to the health care providers, and it also asks if those subpoenas were accompanied by any other correspondences or documents. Question 30 asks if any documents, records or other items were returned in response to the subpoenas. Question 31 asks if any health treaters were deposed, and it also asks for a list of those who possess a record of the depositions. Question 32 asks for details about any documents returned in response to the subpoenas that were not produced at the deposition. Plaintiffs state that these questions are relevant to liability issues and punitive damages. Wal-Mart objects to these interrogatories and again relies on inapplicable local rules. Wal-Mart asserts that it has provided plaintiffs with copies of the subpoenas and records obtained, and also states that plaintiffs were present at the discovery depositions of the health care treaters.

In the supplemental answers to the interrogatories, Wal-Mart provides the "none known at this time; investigation continues" response to questions 29, 30, 31 and 32. That response is not sufficient for the above-discussed reasons. Wal-Mart states that it has provided the subpoenas and records obtained, but plaintiffs maintain that there are still outstanding communications and documentation (plf. reply at 10). Even if plaintiffs were present at the discovery depositions, question 31 also asks for who possesses records made of those depositions. If Wal-Mart has actually provided the documents, correspondence and communications requested, then it is only required to state as much in direct response to the interrogatories. The answers that it provided nine years ago are not satisfactory. The objections to questions 28, 29, 30, 31 and 32 are overruled.

Plaintiffs also seek to compel Wal-Mart's response to the supplemental notice to produce, in which plaintiffs asks for the computer used on August 4, 1993, and any logs or reports relating to that computer's inspection, repair, or malfunction (def. Ex. A(B)). Plaintiffs state that these requests relate to issues of liability and that production is necessary to prevent unfair surprise at trial. Wal-Mart contends that it has already responded to the notice to produce, and cites Exhibits G, I and K. Wal-Mart's position is not persuasive. We noted above that Exhibit G, and its list of general objections, are non-responsive. Exhibit I, which contains Wal-Mart's answers to the first set of interrogatories filed in this court, presents the same list of general objections contained in Exhibit G. Moreover, Wal-Mart identifies question 8, which asks only for the name of the 1993 software program, if it is currently used, and for its production (def. Ex. I). These requests are of a markedly different scope than those in the supplemental notice to produce, which asks for the computer itself and any relevant maintenance and error logs. Wal-Mart provided information about the software program in its answers to the supplemental interrogatories and requests for production (def. Ex. K), but even these answers do not respond to the supplemental notice to produce. As the discussion in the summary judgment section of this order should make clear, the computer is an essential part of plaintiffs' case. Wal-Mart's objections to the supplemental notice to produce the computer and related maintenance records are overruled.

In their supplemental notice to produce, dated October 1, 1998, plaintiffs seek information relating to any Toradol incidents similar to the August 4, 1993, event, including any incident reports or documents, Adverse Drug Reports filed by Wal-Mart, and any claims or lawsuits. Plaintiffs assert that these requests relate to issues of liability, and to prevent unfair surprise at trial. Wal-Mart contends that the information sought can be found in

previously filed responses. It first points to the answers to additional interrogatories, Exhibit F.

In Exhibit F, the answers to questions 2 and 3 note an ongoing investigation, which is not responsive. In response to the first question, Wal-Mart states that it did not know of any similar occurrences, which would seem to obviate the need to produce any reports or documents requested in the October 1, 1998, supplemental notice to produce. However, in the interest of conformity, and due to the fact that the answers to the additional interrogatories were submitted over six years ago, we order Wal-Mart to answer request (a). If no similar occurrences are known, then the burden of responding is negligible. Wal-Mart's reliance on Exhibit G fails for the above-stated reasons. Wal-Mart also refers to its answer to plaintiffs' supplemental notice to produce (Ex. L), which was filed in the McHenry County court. The response it highlights only relates to incident reports generated from the August 3, 1994, incident. Plaintiffs seek information relating to any similar occurrences within the five years preceding that incident. Wal-Mart's objections to the supplemental notice to produce, dated October 1, 1998, are overruled.

Plaintiffs next seek a response to their additional notice to produce (def. Ex. A(D)), in which they request copies of written communications that Wal-Mart made to pharmacists for the five years prior to the August 4, 1993, incident. According to plaintiffs, this information is relevant to the issue of liability. Wal-Mart objects, and argues that plaintiffs do not identify any specific request, document or matter. Wal-Mart also references its response to the first notice to produce, in which it objected to a request on the grounds that it calls for work product.

The first notice to produce is not attached as an exhibit, which complicates evaluating

the responsiveness of Wal-Mart's answer. Also, we do not believe that written communications that Wal-Mart made to its pharmacists constitute protected attorney work product. With respect to Wal-Mart's objection to the broad scope of the request, we agree with plaintiffs that the request specifically identifies only written communications, and it identifies a specific time period. Rule 34(b) allows for identification of material by category. The objection to the additional notice to produce is overruled.

Plaintiffs filed a second set of interrogatories after Wal-Mart removed this matter to federal court (def. Ex. A(E)), and they now seek to compel Wal-Mart to answer those questions. Plaintiffs assert that the answers to these questions bear on liability and are necessary to prevent unfair surprise at trial. Wal-Mart contends that it has previously responded to the interrogatory questions in its response to the first interrogatories (def. Ex. I), and in its answers to plaintiffs' supplemental interrogatories and requests for production (def. Ex. K). Neither of these documents is responsive to the second set of interrogatories. Wal-Mart's response to the first interrogatories merely contains general objections that, as we have noted above, are inadequate. Moreover, the questions posed in the first interrogatories are different from those presented in the second set. Similarly, the answers provided to the supplemental interrogatories and requests for production do not address the questions in the second set of interrogatories. Wal-Mart has not responded to the second set of interrogatories, and it is now ordered to do so.

Plaintiffs next move to compel Wal-Mart's answer to the first request for admission under Rule 36 (def. Ex. A(F)). Wal-Mart objects to all requests on the ground that they were issued after April 26, 2005, which was the purported fact discovery cutoff date. Wal-Mart also objects on the ground that the court ordered all litigation stayed prior to a scheduled pretrial

conference. In response, plaintiffs posit that requests for admissions are not discovery devices but, instead, tools for limiting issues for trial. We agree with the latter proposition but cannot concur with the form. Rule 36 is located in Section V of the Rules of Civil Procedure, which is titled "Depositions and Discovery." Further, the advisory committee's explanatory statement concerning the 1970 amendments describes a request for admission as a "discovery device." Requests for admission are thus subject to discovery rules. However, even if April 26, 2005, marked the close of fact discovery, our request on August 1, 2005, which we reiterated on August 17, 2005, for outstanding and additional discovery, indicates that we did not, and still do not find discovery to have terminated. The outstanding and additional discovery is limited and discrete. Wal-Mart's depiction of plaintiffs' discovery requests as "an infinite amount of discovery" (def. surreply at 5) is hyperbole.

In light of the resolution of the summary judgment motions, the admissions requested focus on central issues such as Wal-Mart's knowledge of Heidi's allergies, the status of the computer system, whether or not the computer program was overrode, whether Bowser filled the prescription, whether Dr. Lorenc's office was called, and whether any warnings were given about potential adverse reactions to Toradol. These requests will establish certain facts as true and narrow the issues for trial. <u>Asea, Inc. v. Southern Pacific Transp. Co.</u>, 669 F.2d 1242, 1245 (9th Cir. 1981). Wal-Mart's objection to the first request for admission is overruled.

Turning to the additional discovery, plaintiffs move to compel Wal-Mart to answer the third interrogatories (def. Ex. A(G)), which includes twelve questions that Wal-Mart believes it has answered in several previously filed responses. However, the responses and answers Wal-Mart identifies do not directly address the questions in the third interrogatories, or are unresponsive for other reasons. For example, the response to the notice to produce (def. Ex.

E) and the supplemental answers to interrogatories (def. Ex. H), note that the investigation is ongoing. Answer 1 of the supplemental interrogatories and requests (def. Ex. K) addresses policies relating to the filling of prescriptions, while questions 5 and 7 in the third interrogatory specifically ask for any written notes, communications or internal memorandums regarding the proper number of prescriptions a pharmacist should fill in a certain time period (def. Ex. A(G)). We have addressed above why the response to the first notice to produce (def. Ex. G) and the answers to the first interrogatories (def. Ex. I) are not sufficient. Finally, the information about the computer software in the answers to supplemental interrogatories and requests (def. Ex. K) does not respond to the computer-related questions in the third interrogatories. Wal-Mart's objections to the third interrogatories are overruled.

Plaintiffs also seek to compel Wal-Mart's response to second request for production, which contains nine separate requests (def. Ex. A(H)). Wal-Mart's objections to the second request for production are based on the same answers and responses that it cited in its objection to the third interrogatories. Those objections are overruled for the above-cited reasons. We pause here to address Wal-Mart's claim that plaintiffs assert a new theory of liability when they seek information relating to the workload in the pharmacy. We disagree. The information plaintiffs request support their negligence theory. Moreover, Wal-Mart's position that only August 4, 1993, is relevant is without merit and support. Communications to pharmacists, training provided on the computer system and issues relating to the pharmacists' work load are all relevant to plaintiffs' theories, particularly after the above summary judgment rulings.

Lastly, plaintiffs seek responses to their second Rule 36 request for admission, which

contains four separate requests (def. Ex. A(I)).[6] In support of its objection to the second Rule 36 request, Wal-Mart cites its response to the first Rule 36 request. That objection is overruled for the above-discussed reasons. The requests in the second Rule 36 request are particularly relevant to the battery count, and the responses will focus the issues for trial.

In sum, plaintiffs' motion to compel is granted, except as to questions 17, 18 and 19 of the first interrogatories, which plaintiffs have withdrawn.

## CONCLUSION

For the foregoing reasons, Wal-Mart's motion for summary judgment is denied. Plaintiffs' motion to compel is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 8, 2006.

---

[6] There is either a typographical error in the reply or the request because plaintiffs state that there are five requests for admission, but the Rule 36 request only contains four requests.